UNITED STATES of America, Plaintiff,

v.

WATER QUALITY INSURANCE SYNDICATE, Defendant and Third-Party Plaintiff,

v.

M/V COVE LEADER, her engines, boilers, tackle, etc., and Cove Shipping, Inc., Third-Party Defendants.

No. 84 Civ. 7737 (GLG).

United States District Court, S.D. New York.

July 11, 1985.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., Janis G. Schulmeisters, Atty. in charge, New York City, N.Y., for the U.S. of America; Janis G. Schulmeisters, Thomas F. Murphy, Jr., of counsel.

Thacher, Proffitt & Wood, New York City, N.Y., Attys. for defendant and third-party plaintiff; Sheldon A. Vogel, John M. Woods, of counsel.

Freehill, Hogan & Mahar, New York City, N.Y., for third-party defendants; Patrick J. Bonner, of counsel.

## OPINION

GOETTEL, District Judge:

The Government commenced this action on October 25, 1980, to recover expenses it incurred cleaning up an oil spill. By motion, the defendant and third-party plaintiff and the third-party defendant seek to dismiss this action as time barred. For the reasons set forth below, the Court denies this motion.

## I. BACKGROUND

On February 25, 1980, approximately 630 gallons of No. 6 oil spilled from the Coastal 2505 into the Intracoastal Waterway at Tucker Bayou, Deer Park, Texas. The spill resulted from the rupture of the hose through which the Coastal 2505 was discharging the oil. The United States and private contractors, whom the Government hired, cleaned up the spill.[1] The cleanup was completed on or around March 4, 1980, at a cost to the United States of approximately $30,133.54.

Almost four and a half years later, on October 25, 1984, the United States commenced this action pursuant to section 311 of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1321, to recover the cleanup costs from Coastal Towing, Inc., the owner and operator of Coastal 2505, and Water Quality Insurance Syndicate ("WQIS"), the insurer of Coastal 2505.[2] The Government voluntarily dis-

1. Allegedly, the owner and operator of the Coastal 2505 refused or was unable to properly remove the oil. Section 1321(c)(1) of Title 33 of the United States Code provides:

Whenever any oil or a hazardous substance is discharged, or there is a substantial threat of such discharge, into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone, or in connection with activities under the Outer Continental Shelf Lands Act [43 U.S.C. 1331 et seq.] or the Deepwater Port Act of 1974 [33 U.S.C. 1501 et seq.], or which may affect natural resources belonging to, appertaining to, or under the exclusive management authority of the United States (including resources under the Magnusen Fishery Conservation and Management Act [16 U.S.C. 1801 et seq.]) the President is authorized to act to remove or arrange for the removal of such oil or substance at any time, unless he determines such removal will be done properly by the owner or operator of the vessel, onshore facility, or offshore facility from which the discharge occurs.
33 U.S.C. § 1321(c)(1) (1982).

2. Section 1321(f)(1) of Title 33 of the United States Code provides:

Except where an owner or operator can prove that a discharge was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States Government, or (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, or any combination of the foregoing clauses, such owner or operator of any vessel from which oil or a hazardous substance is discharged in violation of subsection (b)(3) of this section shall, notwithstanding any other provision of law, be liable to the United States Government for the actual costs incurred under subsection (c) of this section for the removal of such oil or substance by the United States Government in an amount not to exceed, in the case of an inland oil barge $125 per gross ton of such barge, or $125,000, whichever is greater, and in the case of any other vessel, $150 per gross ton of such vessel (or, for a vessel carrying oil or hazardous substances as cargo, $250,000), whichever is greater, except that where the United States can show that such discharge was the result of willful negligence or willful misconduct within the privity and knowledge of the owner, such owner or operator shall be liable to the United States Government for the full amount of such costs. Such costs shall constitute a maritime lien on such vessel which may be recovered in an action in rem in the district court of the United States for any district within which any vessel may be found. The United States may also bring an action against the owner or operator of such vessel in any

missed the action against Coastal Towing on November 13, 1984. Defendant WQIS filed an answer asserting several affirmative defenses. It also filed a third-party complaint against the M/V Cove Leader and her owner, Cove Shipping, Inc. ("Cove"), in which WQIS alleged that the rupture of the hose and oil spill resulted solely from the excessive speed and wake wash of the passing Cove Leader.

WQIS now moves for an order granting summary judgment and dismissing the action on the grounds that it is barred by the three-year statute of limitations for tort actions contained in 28 U.S.C. § 2415(b). Cove joins in this motion.

The United States contends that no statute of limitations applies to actions brought on behalf of the United States to enforce the statutory FWPCA remedy created by 33 U.S.C. § 1321(f)(1). Alternatively, the United States contends that if a statute of limitations applies, it is the six-year provision for contract actions contained in 28 U.S.C. § 2415(a).

## II. DISCUSSION

### A. Sovereign Immunity

■ The doctrine of sovereign immunity provides that the United States as a plaintiff is not bound by any statute of limitations unless Congress provides otherwise. *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938); *Federal Maritime Commission v. Caragher,* 364 F.2d 709, 718 (2d Cir.1966). The FWPCA contains no statute of limitations applicable to a cleanup cost recovery action brought by the United States under 33 U.S.C. § 1321(f)(1). The Government thus argues that no statute of limitations applies to this action. In enacting the FWPCA, Congress intended to shift the cost of oil spills away from the public and toward those who engage in enterprises that use the navigable waters and give rise to oil pollution. *See United States v. Coastal States Crude Gathering Co.,* 643 F.2d 1125, 1128 (5th Cir.1981). The courts should not restrict this cost-shifting intent

court of competent jurisdiction to recover such costs.

and the remedial nature of the FWPCA, argues the Government, by applying 28 U.S.C. § 2415 to the instant action.

The Government has not cited a case that held 28 U.S.C. § 2415 inapplicable to FWPCA actions, nor have we found any. The courts that have considered the issue of the appropriate limitations period have either rejected or not considered the Government's argument that it is not subject to any limitations. We also reject the Government's argument.

The legislative history of 28 U.S.C. § 2415 indicates that the purpose of the statute was to establish statutes of limitations on certain broad types of governmental claims. *See* Statute of Limitation Act: Hearings on H.R. 13652 Before the Subcomm. of the House Comm. in the Judiciary, 89th Cong., 2d Sess., ser. 15 at 6–7 (1966) (statement of John M. Douglas, Assistant Attorney General). "[I]t is only right that the law should provide a period of time within which the Government must bring suits on claims just as it now does to claims of private individuals." S.Rep. No. 1328, 89th Cong., 2d Sess. 1, *reprinted in* 1966 U.S.Code Cong. & Ad.News 2502, 2503. As stated in the report by the Committee on the Judiciary of the House of Representatives:

Statutes of Limitation have the salutary effect of requiring litigants to institute suits within a reasonable time of the incident or situation upon which the action is based. In this way the issues presented at the trial can be decided at a time when the necessary witnesses, documents, and other evidence are still available. At the same time, the witnesses are better able to testify concerning the facts involved for their memories have not been dimmed by the passage of time. The committee feels that the prompt resolution of the matters covered by the bill is necessary to an orderly and fair administration of justice. Stale claims can neither be effectively presented nor adjudicated in a manner which is fair to the parties involved.

33 U.S.C. § 1321(f)(1) (1982).

1966 U.S.Code Cong. & Ad.News 2502, 2503.[3] Thus, section 2415 was enacted "to establish statutes of limitations which will apply to contract and tort actions brought by the United States." S.Rep. No. 1328, 89th Cong., 2d Sess. 1, *reprinted in* 1966 U.S.Code Cong. & Ad.News 2502.

The Government contends that the FWPCA cleanup cost recovery action is founded upon a unique statutory remedy, and not upon a tort or contract. It contends, therefore, that section 2415 does not apply. However, as discussed below, this action is based upon a contract implied in law. The contention that the FWPCA was intended to create a new and unique system of liability does not diminish the nature of the cleanup cost recovery action. *United States v. P/B Stco 213*, 756 F.2d 364, 376 (5th Cir.1985).

The Government also argues that 33 U.S.C. § 1321(f) provides that a discharger shall be liable to the United States Government "notwithstanding any other provision of law." 33 U.S.C. § 1321(f)(1). By this language, argues the Government, it is evident that recovery is to be unencumbered by other statutes as much as possible, including limitation periods.

▮ The meaning of this language is unclear. *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1162 (2d Cir. 1978).

> While various meanings can be drawn from this phrase ..., we think it means that the remedies established by the FWPCA are not to be modified by any preexisting law. The main objective apparently was to assure that the limits on recoveries established by § 1321(f) are not to be varied by the different limits established by the Limitation Act.

*In the Matter of Oswego Barge Corp.*, 664 F.2d 327, 340 (2d Cir.1981) (citations omitted). Thus, this language was intended to apply to conflicts between the FWPCA and the Limitation of Shipowner's Liability Act, 46 U.S.C. §§ 181–195, and not time limitations.

In summary, the limitations of section 2415 are applicable to the instant controversy.

### B. *The Applicable Statute of Limitations*

Section 2415 provides in pertinent part:

> (a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues....

> (b) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon a tort shall be barred unless the complaint is filed within three years after the right of action first accrues....

28 U.S.C. § 2415 (1982). WQIS and Cove argue that the Government's action for oil spill damages is founded upon a tort. Therefore, they contend, the three-year statute of limitations applies and thus the action is time barred by 28 U.S.C. § 2415(b). The Government argues that the six-year statute of limitations applies because the recovery sought is for restitution of its expenditures and thus the action is founded upon a contract implied in law.

---

**3.** Testifying in support of the legislation, Assistant Attorney General John W. Douglas listed five reasons why general statutes of limitations on governmental claims were appropriate:

(1) The limitations would tend to equalize the position of litigants in federal court, whether the case be by or against the government or between private parties.

(2) The limitations would lead to more effective and fair conduct of government litigation.

(3) The limitations would lessen the costs of keeping records, and of detecting and collecting on old claims.

(4) The limitations would eliminate the assertion of stale government claims.

(5) The limitations would enable potential defendants to put to one side eventually the thought of possible suits against them.

We agree that "this is essentially an action for restitution, to recover money expended to discharge the duty of clean-up imposed by law on the alleged polluter in the first instance, which the polluter did not perform although obligated to do so." *United States v. Shawnee, Inc.*, 608 F.Supp. 649, 650 (S.D.N.Y.1985).

The primary duty to clean up the oil spill lies with the polluter. *United States v. P/B Stco 213, supra*, 756 F.2d at 368-70; *United States v. Barge Shamrock*, 635 F.2d 1108, 1110 (4th Cir.1980); *United States v. Poughkeepsie Housing Authority*, No. 80-1998, slip op. at n. 10 (S.D.N.Y. Oct. 16, 1981). If the discharger does not initiate cleanup operations, the Government is authorized to do so. *United States v. P/B Stco 213, supra*, 756 F.2d at 370; *United States v. Poughkeepsie Housing Authority, supra*, slip op. at n. 10. In the instant action, the Government cleaned up the oil spill because Coastal Towing refused or was unable to properly remove the oil. Allegedly, despite numerous demands, Coastal Towing and WQIS have not paid the costs.

When one party receives some benefit either in goods or services, but does not compensate the party who has conferred the benefit, courts have allowed the uncompensated party to assert a quantum meruit or quasi-contractual claim for the value of the benefits conferred.... Such a quasi-contractual obligation is created in order to do justice to the parties, "without any expression of assent and sometimes even against a clear expression of dissent."

In the instant action, although the oil spill could be considered a tort ..., the Government is not seeking compensatory damages suffered as a result thereof, but rather restitution for the money it expended on behalf of the defendants to remove the discharge. Defendants have received the benefits of prompt governmental action on their behalf and should therefore make restitution to the govern-

ment for its efforts. Accordingly, the Government's suit to recover the value of the benefits conferred must be characterized as quasi-contractual.

*United States v. Poughkeepsie Housing Authority, supra*, slip op. at 8-9 (citations and footnotes omitted). Therefore, the six-year statute of limitations of section 2415(a) applies.[4] *See United States v. P/B Stco 213, supra*, 756 F.2d 364; *United States v. Shawnee, Inc., supra*, 608 F.Supp. 649 (sharing the view of *United States v. P/B Stco 213*); *United States v. C & R Trucking Co.*, 537 F.Supp. 1080 (N.D.West Va.1982) (adopting the rationale of *United States v. Poughkeepsie Housing Authority*); *United States v. Poughkeepsie Housing Authority, supra*, No. 80-1998.

## III. CONCLUSION

The six-year limitation in 28 U.S.C. 2415(a) applies to this action. Therefore, the motion for summary judgment and dismissal is denied.

SO ORDERED.

---

**4.** Cove argues that the recent introduction of H.R. 1232, a bill designed to replace FWPCA, contains a three-year statute of limitations and evidences Congress' intent that a three-year limi-

tation applies. This bill is not yet adopted, and is not entitled to any weight. *United States v. Shawnee, Inc.*, 608 F.Supp. 649, 650 (S.D.N.Y. 1985).